UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE W. DUNHAM,

       Plaintiff(s),

v.

FORTIS INS. CO.,

       Defendant(s).

_____/

Case No. 04-70513

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [22]**

Defendant Fortis Insurance Company's motion for summary judgment is presently before the Court. The dispositive issue is whether the Plaintiff's acoustic neuroma, or brain tumor, can be classified as a "pre-existing condition" under the parties' contract for insurance coverage. Because the Court finds that it was and for the reasons stated below, the motion is GRANTED.

**I.    Background**

Plaintiff George Dunham was covered under a short term health insurance policy ("the policy") by Defendant from July 4, 2003 until January 5, 2004. (Def.'s Ex. A.) A "pre-existing condition" is explicitly excluded from coverage. (Id. at 10.) A "pre-existing condition" is "[a] Sickness, Injury, disease or physical condition" that meets one of two conditions. (Id. at 3.) First, the condition may be one "for which the Covered Person received medical treatment or advice from a Physician with the 2 year period immediately preceding the Effective Date of Coverage . . . ." (Id.) Second, it may be one "which

produced signs or symptoms within the 2 year period immediately preceding the Effective Date of Coverage . . . ."  (Id.)  The policy further states that

> [t]he signs or symptoms must have been significant enough to establish manifestation or onset by one of the following tests:
>
>   a.  The signs or symptoms would have allowed one learned in medicine to make a diagnosis of the disorder; or
>
>   b.  The signs or symptoms should have caused an ordinarily prudent person to seek diagnosis or treatment.

(Id. at 3.)  Thus, there are three ways to establish a "pre-existing condition:" if the insured (1) received treatment or advice concerning the condition ("Treatment Clause"); (2) had signs or symptoms that would have allowed a diagnosis of the condition ("Symptoms Clause A"); or (3) had signs or symptoms that would have caused a reasonable person to go to the doctor ("Symptoms Clause B").

On February 26, 2003, with his health insurance about to expire, Plaintiff went to see Robert L. Gong, M.D. for a physical examination.  (Dunham Dep. at 12.)[1]  During the examination, Plaintiff informed Dr. Gong that he had muscular dystrophy.  (Id. at 12; Pl.'s Ex. C.)[2]  In addition, prior to the appointment, Plaintiff prepared a list of symptoms that he was experiencing: "pain in the muscles on the back of [his] head", "upper stomach pain", "stuffy ears", "dry mouth with foamy saliva", "loss of appetite", "a loss of a sense of taste", and "vertigo." (Dunham Dep. at 16.)  So, he also informed Dr. Gong of all the symptoms on this list. (Id. at 17.)  Dr. Gong noted that Plaintiff had a rash around his toes, and a few

---

[1]Dr. Gong's office is located in Cambria, California, which is where Plaintiff was living at that time.  (Dunahm Dep. at 13, 19-20.)

[2]In 1985, Plaintiff was diagnosed with muscular dystrophy.  (Dunham Dep. at 11.) However, coverage for this disease is not at issue in this case.

2

other minor problems.  (Pl.'s Ex. D "Dr. Gong's Notes".)   Other than the muscular dystrophy, however, Dr. Gong did not find any significant problems.  (*See* Dr. Gong's Notes.)

Plaintiff returned a few weeks later to discuss the results of the examination. (Dunham Dep. at 15.)  Although he had many of the same symptoms, Plaintiff thought he was getting better.  (Id. at 20.)  Dr. Gong did not make any further diagnoses or order additional tests as a result of this visit.  (Id.)

In the summer of 2003, Plaintiff went to South Dakota, where he was planning to volunteer for three months.  (Id. at 21.)   In July, Plaintiff experienced the following symptoms: double vision, listing to right, and a sharp pain in right eye radiating downward. (Id. at 22.)  On July 25, 2003, Plaintiff was taken to the emergency room at Rapid City Regional Hospital in Rapid City, South Dakota.  (Id. at 25-26.)  After an MRI and CT scan, he was diagnosed with a right acoustic neuroma, or brain tumor, that had begun to hemorrhage.  (Def.'s Ex. D "Rapid City Hospital Records" at 2.)  He was discharged on July 29th so that he could be transferred to the University of Michigan Medical Center.  (Id.)

On August 18, 2003, Plaintiff underwent surgery for removal of the tumor.  (Def.'s Ex. E "University of Michigan Medical Center Records" at 5.)  B. Gregory Thompson, M.D., the attending surgeon, removed the tumor.  (Id. at 5-6.)

Defendant then began an investigation of Plaintiff's situation to determine if it would cover the medical expenses under the parties' policy.  A number of doctors[3] reviewed the records and independently concluded that the tumor was a "pre-existing condition" and that

---

[3]The medical doctors hired by Defendant to review Plaintiff's case were Dr. Scott Brumblay, Dr. Charlotte Heidenrich, Dr. Kenneth Beckman, and Dr. Michael Kyle.

3

Plaintiff's expenses were not covered.  Defendant then denied Plaintiff's claim and upheld

this decision throughout an appeals process.  After a complaint against Defendant for

breach of contract was filed, Plaintiff obtained testimony of two different doctors.[4]  Contrary

to the other opinions, they concluded that, based on the contract language, Plaintiff did not

have a "pre-existing condition."  Defendant then filed a motion seeking summary judgment.

## II.   Standard of Review

> Summary judgment is appropriate only where "there is no genuine issue as
> to any material fact and . . . the moving party is entitled to a judgment as a
> matter of law."  FED. R. CIV. P. 56(c).  A district court faced with a summary
> judgment motion must view all evidence and the inferences to be drawn
> therefrom in the light most favorable to the non-movant.  *Matsushita Elec.
> Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The critical
> inquiry for a district court is "whether the evidence presents a sufficient
> disagreement to require submission to a jury or whether it is so one-sided
> that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby,
> Inc.*, 477 U.S. 242, 251-52 (1986).

*Miller v. Calhoun County*, 408 F.3d 803, 811-12 (6th Cir. 2005).

## III.   Analysis

In insurance disputes, the law where the insured is domiciled typically has the most

significant relationship to the case and therefore is normally the law applied.  *See, e.g.,

Bowers v. Jefferson Pilot Financial Ins. Co.*, 219 F.R.D. 578 (E.D. Mich. 2004).   In this

case, it appears that Plaintiff was domiciled in California at the time the insurance policy

was applied for.  Therefore, the law of California governs this case.

"[T]he meaning and application of language in an insurance policy . . . is purely an

issue of law."  *Vitton Const. Co. v. Pacific Ins. Co.*  2 Cal.Rptr.3d 1, 4 (Cal. Ct. App.

2003)(citation omitted).  The same rules governing contract interpretation also apply to

---

[4]The doctors hired by Plaintiff are Dr. Irvin Gastman and Dr. Carol Vorenkamp.

insurance policy disputes.  *Id.*  Specifically, the mutual intent of the parties is controlling.  *Id.*  If possible, this intent is taken from the written language of the policy.  *Id.*  The provisions must be given

> their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage.  A policy provision is ambiguous *only* if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole.

*Id.* (citation omitted)(emphasis in original).

### A.  Treatment Clause

For a sickness, injury, disease or physical condition to be classified as a "pre-existing condition" under the Treatment Clause, it must be one "for which" Plaintiff "received medical treatment or advice."  Defendant argues that Plaintiff's examination by Dr. Gong constituted "medical treatment or advice."  Plaintiff responds that this visit cannot satisfy the Treatment Clause because, at that time, his tumor was not diagnosed.

Courts that have addressed this exact contract language have come up with different conclusions.  *See Lawson v. Fortis Ins. Co.*, 301 F.3d 159, 163-65 (3rd Cir. 2002)(noting the split of authority on this issue).  Some courts, focusing on the word "for," contend that treatment cannot be received for a particular condition until there is a proper diagnosis.  *See, e.g., id.* at 165.  Other courts have found that treatment can occur even if the physician is not fully aware of the cause of the symptoms.  *See, e.g., Bullwinkel v. New England Mutual Life Ins. Co.*, 18 F.3d 429 (7th Cir. 1994).

The Court finds that the contract is reasonably susceptible to either interpretation and is therefore ambiguous.  "'If an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally

5

construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage."  *Nava v. Mercury Cas. Co.*, 13 Cal.Rptr.3d 816, 817 (Cal. Ct. App. 2004)(citation omitted).  Thus, summary judgment in favor of Defendant is not warranted under this provision.

### B.  Symptoms Clause A

To satisfy Symptoms Clause A, Plaintiff must have had "signs or symptoms [that] would have allowed one learned in medicine to make a diagnosis of the disorder[.]" Defendant argues that Plaintiff's symptoms at the time of his visit with Dr. Gong–specifically vertigo and hearing loss–fulfill this requirement.

Plaintiff, on the other hand, points out that a brain tumor can only be confirmed with an MRI and that the other symptoms could be caused by some other illness.  Defendant acknowledges these facts, but contends that, based on Plaintiff's symptoms, "one learned in medicine" would have ordered an MRI and discovered the tumor.  Plaintiff does not seem to seriously contest this claim, but instead argues that this circumstance does fulfill the condition; rather, the symptoms must be sufficient for the diagnosis.

The plain language of the contract does not mention additional testing.  The condition fits within this clause if the "*signs or symptoms* would have allowed . . . a diagnosis of the disorder[.]"  Defendant argues, however, that a diagnosis is normally made with the aid of technology–*e.g.,* an MRI scan–and present day physicians cannot be required to confirm a diagnosis on, say, a patient's complaints.  This misses the point.  The requirements for the "pre-existing condition" exclusion are in place to aid in the determination of what illnesses an insured had before the policy began.  A reviewing doctor who claims that she would have ordered more tests to determine if the problem was a tumor as opposed to,

6

say, the flu does little to advance the inquiry about what illness the insured actually had. Moreover, the plain language of the contract does not support Defendant's interpretation. At the very least, this clause is susceptible to two interpretations and therefore ambiguous. Thus, in either event, summary judgment is not appropriate.

## C. Symptoms Clause B

For either Symptoms Clause, the policy first requires that the condition produce signs or symptoms within two years before coverage begins. As noted above, Plaintiff noted certain symptoms during and for his examination with Dr. Gong that, in retrospect, have been determined to be caused by the tumor. Plaintiff argues that the symptoms are generic and *may* have been caused by some other illness such as the flu. Defendant has, however, presented testimony of numerous doctors that the symptoms were caused by the tumor. Plaintiff has not rebutted this with anything other than conjecture.[5] There is therefore no genuine issue that the symptoms were caused by the tumor.

For Symptoms Clause B, the signs or symptoms must also be such that they "should have caused an ordinarily prudent person to seek diagnosis or treatment . . . ." In arguing that Plaintiff's symptoms fit in this category, Defendant relies on *Golden Rule Ins. Co. v. Atallah*, 45 F.3d 512 (1st Cir. 1995).

The plaintiff in *Atallah* had severe depression and became "increasingly unable or unwilling to perform the ordinary tasks of everyday life." *Id.* at 513. Her son finally interjected and attempted to have this problem treated. *Id.* at 513-14. Because the plaintiff

---

[5]In his deposition, Plaintiff claims that the flu was going around his neighborhood. It has not been established, however, whether this claim is founded on personal knowledge and therefore admissible. In any event, even if people who had direct contact with Plaintiff had the influenza virus, there is no evidence that Plaintiff contracted this illness.

was uninsured, her son also applied for insurance with the defendant. *Id.* at 515. In the policy, "an illness or injury . . . which in the opinion of a qualified doctor, (a) probably began prior to the Effective Date . . . ; and (b) manifested symptoms which would cause an ordinarily prudent person to seek diagnosis or treatment . . . " was excluded from coverage as a "pre-existing condition." *Id.* at 515. After the policy had taken effect, the plaintiff had a fainting spell. *Id.* She then underwent a CT scan and EEG, which showed a large brain tumor. *Id.* "All of the doctors who treated [the plaintiff] . . . agreed that her severe depression and reclusiveness were caused by the tumor and that the tumor had been growing for many years." *Id.* The jury concluded that plaintiff's tumor was not a "pre-existing condition." *Id.* at 516. The district court denied the defendant's motion for a judgment as a matter of law. *Id.* The defendant appealed.

The plaintiff argued that definition of "pre-existing condition" noted above "must mean that the symptoms would cause a prudent person to seek diagnosis *of a brain tumor* or a similarly organic brain disease." *Id.* at 517 (emphasis in original). The First Circuit disagreed:

> On its face . . . the clause does not require either a correct diagnosis of the underlying illness or any awareness on the part of the insured or her physician of the nature of the underlying illness. The words "for which" . . . are noticeably absent . . . . [The clause] presents a linguistically uncomplicated test. It simply asks: In the opinion of a qualified doctor, did the illness "manifest symptoms" which would cause an ordinarily prudent person to seek diagnosis or treatment within the five years prior to the Policy's effective date?
>
>   We are unable to ascribe any ambiguity to this test. We think the only plausible meaning of the phrase is just what it says. The clause does not require that the insured seek a particular kind of diagnosis–indeed, common sense tells us that one seeks a diagnosis precisely because one is uncertain of the cause of particular symptoms. It merely requires that the symptoms be such that an ordinarily prudent person would seek diagnosis or treatment.

8

*Id.* at 517-18 (footnotes omitted).[6]

The First Circuit's reasoning is sound. The Court agrees that, based on the plain language of Symptoms Clause B, the symptoms must have been severe enough to cause an ordinarily prudent person to seek diagnosis or treatment for the symptoms regardless of what that person (or the physician) might believe their cause to be. In this case, the vertigo and loss of hearing that Plaintiff was experiencing would have caused a prudent person to seek treatment.[7] Thus, the brain tumor and its hemorrhaging[8] was a "pre-existing condition" under the policy. Defendant's motion must therefore be granted.

## IV. Conclusion

For the reasons stated above, the Court hereby orders that Defendant's motion for summary judgment is GRANTED.

SO ORDERED.

---

[6]The court rejected the plaintiff's argument that this interpretation runs counter to the fraud-preventing policy of these clauses. *Atallah*, 45 F.3d at 518. It found that denying coverage for the illness which is ultimately proven to have caused the symptoms (even though it was not diagnosed before the coverage began) does protect against deceitful purchasers who may avoid diagnosis. *Id.*

[7]Plaintiff emphasizes that he went to Dr. Gong for a routine physical, rather than for a specific diagnosis or treatment related to these symptoms. This is not relevant because, regardless of the reason Plaintiff went to see Dr. Gong, an ordinary prudent person would have sought diagnosis or treatment based on these symptoms.

[8]Plaintiff argues that the brain tumor and the later hemorrhaging are distinct conditions under the policy. This interpretation defies common sense. In any event, regardless of Plaintiff's use of semantics, the principle course of treatment was to remove the tumor. In other words, Plaintiff was treated for his brain tumor, not just the hemorrhaging.

9

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  August 2, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 2, 2005, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE W. DUNHAM,

        Plaintiff(s),

v.

FORTIS INS. CO.,

        Defendant(s).

_____/

Case No. 04-70513

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [22]**

Defendant Fortis Insurance Company's motion for summary judgment is presently before the Court. The dispositive issue is whether the Plaintiff's acoustic neuroma, or brain tumor, can be classified as a "pre-existing condition" under the parties' contract for insurance coverage. Because the Court finds that it was and for the reasons stated below, the motion is GRANTED.

**I.    Background**

Plaintiff George Dunham was covered under a short term health insurance policy ("the policy") by Defendant from July 4, 2003 until January 5, 2004. (Def.'s Ex. A.) A "pre-existing condition" is explicitly excluded from coverage. (Id. at 10.) A "pre-existing condition" is "[a] Sickness, Injury, disease or physical condition" that meets one of two conditions. (Id. at 3.) First, the condition may be one "for which the Covered Person received medical treatment or advice from a Physician with the 2 year period immediately preceding the Effective Date of Coverage . . . ." (Id.) Second, it may be one "which

produced signs or symptoms within the 2 year period immediately preceding the Effective

Date of Coverage . . . ."  (Id.)  The policy further states that

> [t]he signs or symptoms must have been significant enough to establish
> manifestation or onset by one of the following tests:
>
> > a.  The signs or symptoms would have allowed one learned in medicine to
> >     make a diagnosis of the disorder; or
> >
> > b.  The signs or symptoms should have caused an ordinarily prudent
> >     person to seek diagnosis or treatment.

(Id. at 3.)  Thus, there are three ways to establish a "pre-existing condition:" if the insured

(1) received treatment or advice concerning the condition ("Treatment Clause"); (2) had

signs or symptoms that would have allowed a diagnosis of the condition ("Symptoms

Clause A"); or (3) had signs or symptoms that would have caused a reasonable person to

go to the doctor ("Symptoms Clause B").

On February 26, 2003, with his health insurance about to expire, Plaintiff went to see

Robert L. Gong, M.D. for a physical examination.  (Dunham Dep. at 12.)[1]  During the

examination, Plaintiff informed Dr. Gong that he had muscular dystrophy.  (Id. at 12; Pl.'s

Ex. C.)[2]  In addition, prior to the appointment, Plaintiff prepared a list of symptoms that he

was experiencing: "pain in the muscles on the back of [his] head", "upper stomach pain",

"stuffy ears", "dry mouth with foamy saliva", "loss of appetite", "a loss of a sense of taste",

and "vertigo." (Dunham Dep. at 16.)  So, he also informed Dr. Gong of all the symptoms

on this list. (Id. at 17.)  Dr. Gong noted that Plaintiff had a rash around his toes, and a few

---

[1]Dr. Gong's office is located in Cambria, California, which is where Plaintiff was living
at that time.  (Dunahm Dep. at 13, 19-20.)

[2]In 1985, Plaintiff was diagnosed with muscular dystrophy.  (Dunham Dep. at 11.)
However, coverage for this disease is not at issue in this case.

2

other minor problems.  (Pl.'s Ex. D "Dr. Gong's Notes".)   Other than the muscular dystrophy, however, Dr. Gong did not find any significant problems.  (*See* Dr. Gong's Notes.)

Plaintiff returned a few weeks later to discuss the results of the examination. (Dunham Dep. at 15.)  Although he had many of the same symptoms, Plaintiff thought he was getting better.  (Id. at 20.)  Dr. Gong did not make any further diagnoses or order additional tests as a result of this visit.  (Id.)

In the summer of 2003, Plaintiff went to South Dakota, where he was planning to volunteer for three months.  (Id. at 21.)   In July, Plaintiff experienced the following symptoms: double vision, listing to right, and a sharp pain in right eye radiating downward. (Id. at 22.)  On July 25, 2003, Plaintiff was taken to the emergency room at Rapid City Regional Hospital in Rapid City, South Dakota.  (Id. at 25-26.)  After an MRI and CT scan, he was diagnosed with a right acoustic neuroma, or brain tumor, that had begun to hemorrhage.  (Def.'s Ex. D "Rapid City Hospital Records" at 2.)  He was discharged on July 29th so that he could be transferred to the University of Michigan Medical Center.  (Id.)

On August 18, 2003, Plaintiff underwent surgery for removal of the tumor.  (Def.'s Ex. E "University of Michigan Medical Center Records" at 5.)  B. Gregory Thompson, M.D., the attending surgeon, removed the tumor.  (Id. at 5-6.)

Defendant then began an investigation of Plaintiff's situation to determine if it would cover the medical expenses under the parties' policy.  A number of doctors[3] reviewed the records and independently concluded that the tumor was a "pre-existing condition" and that

[3]The medical doctors hired by Defendant to review Plaintiff's case were Dr. Scott Brumblay, Dr. Charlotte Heidenrich, Dr. Kenneth Beckman, and Dr. Michael Kyle.

3

Plaintiff's expenses were not covered. Defendant then denied Plaintiff's claim and upheld this decision throughout an appeals process. After a complaint against Defendant for breach of contract was filed, Plaintiff obtained testimony of two different doctors.[4] Contrary to the other opinions, they concluded that, based on the contract language, Plaintiff did not have a "pre-existing condition." Defendant then filed a motion seeking summary judgment.

## II.    Standard of Review

> Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A district court faced with a summary judgment motion must view all evidence and the inferences to be drawn therefrom in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The critical inquiry for a district court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

*Miller v. Calhoun County*, 408 F.3d 803, 811-12 (6th Cir. 2005).

## III.    Analysis

In insurance disputes, the law where the insured is domiciled typically has the most significant relationship to the case and therefore is normally the law applied. *See, e.g., Bowers v. Jefferson Pilot Financial Ins. Co.*, 219 F.R.D. 578 (E.D. Mich. 2004). In this case, it appears that Plaintiff was domiciled in California at the time the insurance policy was applied for. Therefore, the law of California governs this case.

"[T]he meaning and application of language in an insurance policy . . . is purely an issue of law." *Vitton Const. Co. v. Pacific Ins. Co.* 2 Cal.Rptr.3d 1, 4 (Cal. Ct. App. 2003)(citation omitted). The same rules governing contract interpretation also apply to

---

[4]The doctors hired by Plaintiff are Dr. Irvin Gastman and Dr. Carol Vorenkamp.

4

insurance policy disputes.  *Id.*  Specifically, the mutual intent of the parties is controlling. *Id.*  If possible, this intent is taken from the written language of the policy.  *Id.*  The provisions must be given

> their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage.  A policy provision is ambiguous *only* if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole.

*Id.* (citation omitted)(emphasis in original).

### A.  Treatment Clause

For a sickness, injury, disease or physical condition to be classified as a "pre-existing condition" under the Treatment Clause, it must be one "for which" Plaintiff "received medical treatment or advice."  Defendant argues that Plaintiff's examination by Dr. Gong constituted "medical treatment or advice."  Plaintiff responds that this visit cannot satisfy the Treatment Clause because, at that time, his tumor was not diagnosed.

Courts that have addressed this exact contract language have come up with different conclusions.  *See Lawson v. Fortis Ins. Co.*, 301 F.3d 159, 163-65 (3rd Cir. 2002)(noting the split of authority on this issue).  Some courts, focusing on the word "for," contend that treatment cannot be received for a particular condition until there is a proper diagnosis. *See, e.g., id.* at 165.  Other courts have found that treatment can occur even if the physician is not fully aware of the cause of the symptoms.  *See, e.g., Bullwinkel v. New England Mutual Life Ins. Co.*, 18 F.3d 429 (7th Cir. 1994).

The Court finds that the contract is reasonably susceptible to either interpretation and is therefore ambiguous.  "'If an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally

5

construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." *Nava v. Mercury Cas. Co.*, 13 Cal.Rptr.3d 816, 817 (Cal. Ct. App. 2004)(citation omitted).  Thus, summary judgment in favor of Defendant is not warranted under this provision.

### B.  Symptoms Clause A

To satisfy Symptoms Clause A, Plaintiff must have had "signs or symptoms [that] would have allowed one learned in medicine to make a diagnosis of the disorder[.]" Defendant argues that Plaintiff's symptoms at the time of his visit with Dr. Gong–specifically vertigo and hearing loss–fulfill this requirement.

Plaintiff, on the other hand, points out that a brain tumor can only be confirmed with an MRI and that the other symptoms could be caused by some other illness.  Defendant acknowledges these facts, but contends that, based on Plaintiff's symptoms, "one learned in medicine" would have ordered an MRI and discovered the tumor.  Plaintiff does not seem to seriously contest this claim, but instead argues that this circumstance does fulfill the condition; rather, the symptoms must be sufficient for the diagnosis.

The plain language of the contract does not mention additional testing.  The condition fits within this clause if the "*signs or symptoms* would have allowed . . . a diagnosis of the disorder[.]"  Defendant argues, however, that a diagnosis is normally made with the aid of technology–*e.g.,* an MRI scan–and present day physicians cannot be required to confirm a diagnosis on, say, a patient's complaints.  This misses the point.  The requirements for the "pre-existing condition" exclusion are in place to aid in the determination of what illnesses an insured had before the policy began.  A reviewing doctor who claims that she would have ordered more tests to determine if the problem was a tumor as opposed to,

6

say, the flu does little to advance the inquiry about what illness the insured actually had. Moreover, the plain language of the contract does not support Defendant's interpretation. At the very least, this clause is susceptible to two interpretations and therefore ambiguous. Thus, in either event, summary judgment is not appropriate.

### C. Symptoms Clause B

For either Symptoms Clause, the policy first requires that the condition produce signs or symptoms within two years before coverage begins. As noted above, Plaintiff noted certain symptoms during and for his examination with Dr. Gong that, in retrospect, have been determined to be caused by the tumor. Plaintiff argues that the symptoms are generic and *may* have been caused by some other illness such as the flu. Defendant has, however, presented testimony of numerous doctors that the symptoms were caused by the tumor. Plaintiff has not rebutted this with anything other than conjecture.[5] There is therefore no genuine issue that the symptoms were caused by the tumor.

For Symptoms Clause B, the signs or symptoms must also be such that they "should have caused an ordinarily prudent person to seek diagnosis or treatment . . . ." In arguing that Plaintiff's symptoms fit in this category, Defendant relies on *Golden Rule Ins. Co. v. Atallah*, 45 F.3d 512 (1st Cir. 1995).

The plaintiff in *Atallah* had severe depression and became "increasingly unable or unwilling to perform the ordinary tasks of everyday life." *Id.* at 513. Her son finally interjected and attempted to have this problem treated. *Id.* at 513-14. Because the plaintiff

---

[5]In his deposition, Plaintiff claims that the flu was going around his neighborhood. It has not been established, however, whether this claim is founded on personal knowledge and therefore admissible. In any event, even if people who had direct contact with Plaintiff had the influenza virus, there is no evidence that Plaintiff contracted this illness.

was uninsured, her son also applied for insurance with the defendant. *Id.* at 515. In the policy, "an illness or injury . . . which in the opinion of a qualified doctor, (a) probably began prior to the Effective Date . . . ; and (b) manifested symptoms which would cause an ordinarily prudent person to seek diagnosis or treatment . . . " was excluded from coverage as a "pre-existing condition." *Id.* at 515. After the policy had taken effect, the plaintiff had a fainting spell. *Id.* She then underwent a CT scan and EEG, which showed a large brain tumor. *Id.* "All of the doctors who treated [the plaintiff] . . . agreed that her severe depression and reclusiveness were caused by the tumor and that the tumor had been growing for many years." *Id.* The jury concluded that plaintiff's tumor was not a "pre-existing condition." *Id.* at 516. The district court denied the defendant's motion for a judgment as a matter of law. *Id.* The defendant appealed.

The plaintiff argued that definition of "pre-existing condition" noted above "must mean that the symptoms would cause a prudent person to seek diagnosis *of a brain tumor* or a similarly organic brain disease." *Id.* at 517 (emphasis in original). The First Circuit disagreed:

> On its face . . . the clause does not require either a correct diagnosis of the underlying illness or any awareness on the part of the insured or her physician of the nature of the underlying illness. The words "for which" . . . are noticeably absent . . . . [The clause] presents a linguistically uncomplicated test. It simply asks: In the opinion of a qualified doctor, did the illness "manifest symptoms" which would cause an ordinarily prudent person to seek diagnosis or treatment within the five years prior to the Policy's effective date?
>
> We are unable to ascribe any ambiguity to this test. We think the only plausible meaning of the phrase is just what it says. The clause does not require that the insured seek a particular kind of diagnosis–indeed, common sense tells us that one seeks a diagnosis precisely because one is uncertain of the cause of particular symptoms. It merely requires that the symptoms be such that an ordinarily prudent person would seek diagnosis or treatment.

8

*Id.* at 517-18 (footnotes omitted).[6]

The First Circuit's reasoning is sound. The Court agrees that, based on the plain language of Symptoms Clause B, the symptoms must have been severe enough to cause an ordinarily prudent person to seek diagnosis or treatment for the symptoms regardless of what that person (or the physician) might believe their cause to be. In this case, the vertigo and loss of hearing that Plaintiff was experiencing would have caused a prudent person to seek treatment.[7] Thus, the brain tumor and its hemorrhaging[8] was a "pre-existing condition" under the policy. Defendant's motion must therefore be granted.

## IV. Conclusion

For the reasons stated above, the Court hereby orders that Defendant's motion for summary judgment is GRANTED.

SO ORDERED.

---

[6]The court rejected the plaintiff's argument that this interpretation runs counter to the fraud-preventing policy of these clauses. *Atallah*, 45 F.3d at 518. It found that denying coverage for the illness which is ultimately proven to have caused the symptoms (even though it was not diagnosed before the coverage began) does protect against deceitful purchasers who may avoid diagnosis. *Id.*

[7]Plaintiff emphasizes that he went to Dr. Gong for a routine physical, rather than for a specific diagnosis or treatment related to these symptoms. This is not relevant because, regardless of the reason Plaintiff went to see Dr. Gong, an ordinary prudent person would have sought diagnosis or treatment based on these symptoms.

[8]Plaintiff argues that the brain tumor and the later hemorrhaging are distinct conditions under the policy. This interpretation defies common sense. In any event, regardless of Plaintiff's use of semantics, the principle course of treatment was to remove the tumor. In other words, Plaintiff was treated for his brain tumor, not just the hemorrhaging.

9

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  August 2, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 2, 2005, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

10